UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA                    CASE NUMBER: 1:06CV01267
-------------------------------------------------------------------x
Linda Sharp                            **JUDGE  EGS**

(9 Lynch Street
Huntington Station, NY 11746
1-631-385-2018)
                    Plaintiff,

        -Versus-

The State of New York;
The Governor of the State of New York George E. Pataki;
Attorney General of the State of New York Elliot L. Spitzer;    **MOTION TO APPLY TEMPORARY**
Mayor of the City of New York of the State of New    **RESTRAINING ORDER**
York Michael R. Bloomberg;
Chief Administrative Judge of New York State Unified
Court System Jonathan Lippman;
The Comptroller of the City of New York of the State of
New York William Thompson Jr.;
Commissioner of Finance of the City of New York of the
State of New York Martha E. Stark;
Commissioner of Housing Preservation and
Development of the City of New York of the State of
New York Shaun Donovan;
District Attorney, County of Kings, State of New York,
Charles J. Hynes;
District Attorney, County of Nassau, State of New York,
Kathleen Rice;
District Attorney, County of Suffolk, State of New York,
Thomas J. Spota III;
Clerk of the County of Suffolk of the State of New York,
Judith A. Pascale;
County Executive of the County of the State of New York,
Steve Levy; and
Chief Judge of the State of New York Judith S. Kaye

                    Defendants.
-------------------------------------------------------------------x

RECEIVED

JUL 2 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PLAINTIFF Linda Sharp, hereby motions to this Honorable Court
for the following relief;

1. Enjoining and restraining Defendants Chief Administrative

Judge of New York State Unified Court System Jonathan Lippman

and Chief Judge of the State of New York Judith S. Kaye and all

their charges from interfering, within or without the color of

law, in the matter of NEWMAN & CAHN, LLP -v- MICHAEL SHARP

before the Supreme Court of the State of New York, County of

Suffolk under Index # 24209-2003, enjoining any and all further action in said matter;

2. Completely dismissing mutually discontinued and abandoned matrimonial action Sharp v. Sharp New York State Supreme Court Index #27393-1999, without requiring said parties to pay an over $100,000 "ransom".

   3. Directing such other, further and/or different relief as may seem proper to the Court:

Let notification as per LCvR 65.1 prior to filing application for temporary restraining order, and prompt service after filing be deemed sufficient notification and service.

Dated: Huntington, New York
       July 26, 2006

_____
                                  Linda Sharp
                                  Plaintiff *pro se*
                                  9 Lynch Street
                                  Huntington Station, NY
                                  11746
                                  1 (631) 385-2018

3

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

CASE NUMBER: 1:06CV01267

------------------------------------------------------------------------x

Linda Sharp

**HON. EMMET G. SULLIVAN**

(9 Lynch Street
Huntington Station, NY 11746
1-631-385-2018)

                Plaintiff,

    **-Versus-**

The State of New York;
The Governor of the State of New York George E. Pataki;
Attorney General of the State of New York Elliot L. Spitzer;    **TEMPORARY RESTRAINING ORDER**
Mayor of the City of New York of the State of New
York Michael R. Bloomberg;
Chief Administrative Judge of New York State Unified
Court System Jonathan Lippman;
The Comptroller of the City of New York of the State of
New York William Thompson Jr.;
Commissioner of Finance of the City of New York of the
State of New York Martha E. Stark;
Commissioner of Housing Preservation and
Development of the City of New York of the State of
New York Shaun Donovan;
District Attorney, County of Kings, State of New York,
Charles J. Hynes;
District Attorney, County of Nassau, State of New York,
Kathleen Rice;
District Attorney, County of Suffolk, State of New York,
Thomas J. Spota III;
Clerk of the County of Suffolk of the State of New York,
Judith A. Pascale;
County Executive of the County of the State of New York,
Steve Levy; and
Chief Judge of the State of New York Judith S. Kaye

              Defendants.

------------------------------------------------------------------------x

    **UPON** the annexed affidavit of Linda Sharp, petitioner, dated

July \_\_\_\_\_ , 2006; and upon the matter of NEWMAN & CAHN, LLP -

v- MICHAEL SHARP before the Supreme Court of the State of New

York, County of Suffolk under Index # 24209-2003; and upon all

of the proceedings and affidavit previously had herein:

**LET** the respondents Chief Administrative Judge of New York State
Unified Court System Jonathan Lippman and Chief Judge of the
State of New York Judith S. Kaye, **SHOW CAUSE** before, JUSTICE

1

EMMET G. SULLIVAN, the presiding justice of the UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, 333 Constitution
Ave., NW Washington, DC  20001 on the _____ day of _____ ,
2006, at _____ o'clock in the forenoon or as soon thereafter as
counsel may be heard, why petitioner Linda Sharp should not have
relief pursuant to 18 USC 1961 et seq.; 42 USC 1981-1985; 28 USC
1332, 1343, granting an:

**ORDER**;

1. A Judgment in the nature of prohibition be issued

out of this Court directed to Chief Administrative Judge of

New York State Unified Court System Jonathan Lippman and Chief

Judge of the State of New York Judith S. Kaye enjoining their

charge Justice Jeffrey Arlen Spinner of the Supreme Court of the

State of New York, and any other Justice of the Supreme Court to

which the action or any application by the parties therein may

be referred at a Term, prohibiting them and each of them from

performing or taking any further acts or proceedings in or in

connection with the action and,

2. That Chief Administrative Judge of New York State Unified

Court System Jonathan Lippman and Chief Judge of the State of

New York Judith S. Kaye proceeded without jurisdiction.

3. That Petitioner's rights are being violated and is

prejudiced and were prejudiced by the actions of the Chief

Administrative Judge of New York State Unified Court System

Jonathan Lippman and Chief Judge of the State of New York Judith

S. Kaye's present actions.

2

4. That the actions of the respondents Chief Administrative Judge of New York State Unified Court System Jonathan Lippman and Chief Judge of the State of New York Judith S. Kaye. are a clear attempt to violate

petitioner's fundamental rights to which petitioner is entitled and cannot be ignored.

5. That the petitioner's matrimonial case was seriously

delayed for over 4 years by the sharp law practices statewide, freely accepted and authorized by the

respondents Chief Administrative Judge of New York State Unified Court System Jonathan Lippman and Chief Judge of the State of New York Judith S. Kaye, harming the petitioner and her husband.

6. Imploring Respondents JUSTICE JONATHAN LIPPMAN AND JUSTICE JUDITH KAYE to explain, in meticulous detail, why they authorize the use of racketeering and extortion to the tune of over $100,000.00 to maintain the marital status of Plaintiff

7. Directing such other, further and/or different relief as may seem proper to the court:

**IN THE MEANTIME** and until the determination of this motion and the entry of an order thereon, all proceedings in the matter of NEWMAN & CAHN, LLP -v- MICHAEL SHARP before the Supreme Court of the State of New York, County of Suffolk under Index # 24209-2003, its agents, servants and attorneys, except to oppose this

3

motion or review this order, are hereby stayed until after the hearing and determination of the petition brought on by this order to show cause:

**LET SERVICE** upon the respondents herein Chief Administrative Judge of New York State Unified Court System Jonathan Lippman and Chief Judge of the State of New York Judith S. Kaye, personally and/or by mail, by the ___ day of _____, 2006, shall be deemed just, sufficient and adequate to bring on the above anticipated proceedings.

Dated: July ____ , 2006

_____

4

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA                    CASE NUMBER: 1:06CV01267
--------------------------------------------------------------------x
Linda Sharp                            **HON. EMMET G. SULLIVAN**

(9 Lynch Street
Huntington Station, NY 11746
1-631-385-2018)
                        Plaintiff,

            -Versus-

The State of New York;
The Governor of the State of New York George E. Pataki;
Attorney General of the State of New York Elliot L. Spitzer;   **AFFIDAVIT IN SUPPORT**
Mayor of the City of New York of the State of New
York Michael R. Bloomberg;
Chief Administrative Judge of New York State Unified
Court System Jonathan Lippman;
The Comptroller of the City of New York of the State of
New York William Thompson Jr.;
Commissioner of Finance of the City of New York of the
State of New York Martha E. Stark;
Commissioner of Housing Preservation and
Development of the City of New York of the State of
New York Shaun Donovan;
District Attorney, County of Kings, State of New York,
Charles J. Hynes;
District Attorney, County of Nassau, State of New York,
Kathleen Rice;
District Attorney, County of Suffolk, State of New York,
Thomas J. Spota III;
Clerk of the County of Suffolk of the State of New York,
Judith A. Pascale;
County Executive of the County of the State of New York,
Steve Levy; and
Chief Judge of the State of New York Judith S. Kaye

                        Defendants.
--------------------------------------------------------------------x

Plaintiff, Linda Sharp, duly sworn and deposed, states:

1)    I am the Plaintiff in the above-captioned action.

5

2)    I make this affidavit in support of an order;

a. A Judgment in the nature of prohibition be issued

out of this Court directed to Chief Administrative Judge

of New York State Unified Court System Jonathan Lippman and

Chief Judge of the State of New York Judith S. Kaye

enjoining their charge Justice Jeffrey Arlen Spinner of the

Supreme Court of the State of New York, and any other

Justice of the Supreme Court to which the action or any

application by the parties therein may be referred at a

Term, prohibiting them and each of them from performing or

taking any further acts or proceedings in or in connection

with the action and,

b. That Chief Administrative Judge of New York State

Unified Court System Jonathan Lippman and Chief Judge of

the State of New York Judith S. Kaye proceeded without

jurisdiction.

c. That Petitioner's rights are being violated and is

prejudiced and were prejudiced by the actions of the

Chief Administrative Judge of New York State Unified Court

System Jonathan Lippman and Chief Judge of the State of New

York Judith S. Kaye's present actions.

d. That the actions of the respondents Chief

Administrative Judge of New York State Unified Court System

6

Jonathan Lippman and Chief Judge of the State of New York

Judith S. Kaye. are a clear attempt to violate

petitioner's fundamental rights to which petitioner is

entitled and cannot be ignored.

e. That the petitioner's matrimonial case was seriously

delayed for over 4 years by the sharp law practices

statewide, freely accepted and authorized by the

respondents Chief Administrative Judge of New York State

Unified Court System Jonathan Lippman and Chief Judge of

the State of New York Judith S. Kaye, harming the

petitioner and her husband.

f. Imploring Respondents JUSTICE JONATHAN LIPPMAN AND

JUSTICE JUDITH KAYE to explain, in meticulous detail, why

they authorize the use of racketeering and extortion to the

tune of over $100,000.00 to maintain the marital status of

Plaintiff

g. Directing such other, further and/or different relief

as may seem proper to the court:

3)    A judgment was drafted by Suffolk County Supreme

Court Justice J.A. Spinner (exhibit) in the matter of

NEWMAN & CAHN, LLP -v- MICHAEL SHARP before the Supreme

Court of the State of New York, County of Suffolk under

Index # 24209-2003.

4)    This impending judgment order to be signed on July
31, 2006 by Suffolk County Supreme Court Judge Spinner is
intended to alarm, harass, and financially damage me.

5)    The enclosed Judgment by Judge Lippman and Judge
Kaye's charge Justice Spinner is the most arrogant product
produced by the Suffolk County, New York courts to date
(since 1999). Attorney Cahn insists that the TRO in place
in the discontinued and withdrawn matrimonial case (since
2003) is for his "fee" protection. Indeed, it was in place
for matrimonial Defendant and Plaintiff's protection
against each other in a now discontinued matrimonial case
which no longer exists, according to the clerk's record
keeper of the court and lawyers, past and present.

6)    Judge Spinner told state civil Defendant's wife Linda
Sharp to be quiet or be removed from the court when
designing this "settlement" as this has "nothing" to do
with her. Yet the order refers to the "parties" and Linda
Sharp to mislead. Defendant wife of thirty year vintage
marriage assets are directly intertwined with husband's.
Husband has assets including business and marital home in
his name only. Judge and lawyer surprises defendant wife
and husband by announcing divorce **was never discontinued** to
our chagrin.

7)   Divorce action left open to protect politically
connected crony lawyer for his "fees" by Judge Bivona.
Plaintiff lawyer fee judgment connects husband and wife in
plaintiff fee proposed judgment on July 31, 2006. As it
silences defendant wife. It goes as far as orders defendant
husband to leave marriage in limbo and further punishes
defendant wife who already reconciled with husband.

8)   It further churns legal fees damaging the Sharp family.
The Court behaves as pirates do. The Court acts as Neil
Cahn's private collection agency and goes as far as
committing extortion. The expensive tradeoff. Give 100,000
plus to be allowed to stay married as it attacks our assets
it goes as far as encumbering the marital home. For a
divorce that never happened. These questionable fees for
questionable work. Where in the world do people lose
everything they have to pay a lawyer who disobeyed a judge
when his bill was at the $60,000 range to "help the parties
in their reconciliation" instead he told plaintiff's
husband to kill his wife and get another lawyer if he
wished to reconcile. Lawyer Cahn became a party to all
index's early on. He used his favored position in the court
system to damage his client and client's family. He
invested in a divorce that never took place. Admitted

9

champerty in open court back in November 2002. He self
deals with the Court's help.

9)    We reject this proposed judgment on July 31, 2006.
It's simply disgraceful and un-American. It's too corrupt
and reeks too much of racketeering to be taken seriously.
Lawyer Cahn's hands are very dirty. He is in control of the
Courts and the judges' bizarre decisions minus findings of
fact and conclusions of law.

10)    Lawyer Cahn was allowed to be an expert Medical
witness when he told the court my husband's medical
disability did not apply to verbal agreements.

11)    This perpetual churning of legal fees to Mr. Cahn's
benefit, under the authority of Justice Lippman and Justice
Kaye, is based on a defective, mutually abandoned and
discontinued marital case where no discovery, nor equitable
distribution, took place. Even the marital home is solely
in my husband's name.

12)    The above paragraphed issues represent only a
veritable tip of the iceberg where this above-captioned
case is concerned. However, this one act alone lucidly
represents the criminal and well beyond the color of law
lengths that the defendants and their charges will go
through in order to further their goals. By selling our
marital status on the veritable auction block by charging

10

over $100,000.00 to close the marital case and by acting as
Mr. Cahn's personal collection agency, the Defendants and
their charges have abandoned the state and federal
constitutions, any conceivable concept of civil rights, and
have dovetailed into blatant criminal racketeering.

13)   I, Linda Sharp, am acting as a *pro se* litigant not
trained in law, and if I have failed to follow some
procedural rule of this court, that I be given ample notice
to rectify prior to the ruling of this motion.

   **WHEREFORE**, the Plaintiff requests the Court to issue an
order:

   1. A Judgment in the nature of prohibition be issued
   out of this Court directed to Chief Administrative Judge
of New York State Unified Court System Jonathan Lippman and
Chief Judge of the State of New York Judith S. Kaye
enjoining their charge Justice Jeffrey Arlen Spinner of the
Supreme Court of the State of New York, and any other
Justice of the Supreme Court to which the action or any
application by the parties therein may be referred at a
Term, prohibiting them and each of them from performing or
taking any further acts or proceedings in or in connection
with the action and,

2. That Chief Administrative Judge of New York State
Unified Court System Jonathan Lippman and Chief Judge of
the State of New York Judith S. Kaye proceeded without
jurisdiction.

3. That Petitioner's rights are being violated and is

prejudiced and were prejudiced by the actions of the
Chief Administrative Judge of New York State Unified Court
System Jonathan Lippman and Chief Judge of the State of New
York Judith S. Kaye's present actions.

4. That the actions of the respondents Chief
Administrative Judge of New York State Unified Court System
Jonathan Lippman and Chief Judge of the State of New York
Judith S. Kaye. are a clear attempt to violate

petitioner's fundamental rights to which petitioner is
entitled and cannot be ignored.

5. That the petitioner's matrimonial case was seriously

delayed for over 4 years by the sharp law practices
statewide, freely accepted and authorized by the

respondents Chief Administrative Judge of New York State
Unified Court System Jonathan Lippman and Chief Judge of
the State of New York Judith S. Kaye, harming the
petitioner and her husband.

6. Imploring Respondents JUSTICE JONATHAN LIPPMAN AND
JUSTICE JUDITH KAYE to explain, in meticulous detail, why

they authorize the use of racketeering and extortion to the
tune of over $100,000.00 to maintain the marital status of
Plaintiff

7. Directing such other, further and/or different relief
as may seem proper to the court:


_Alice Kazandy_
4/24/06


_Linda Sharp_
LINDA SHARP
Plaintiff *Pro se*

ALICE KAZANDJIAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01KA4877205, SUFFOLK COUNTY
MY COMM. EXP. NOV. 24, 20_06_

**Certified Copy**

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF SUFFOLK  :   PART 21
 2   -----------------------------------------------X
     NEWMAN & CAHN, LLP,
 3
                              Plaintiff-Petitioner
 4                                                    Index No.
          -against-                                   24209/2003
 5

 6   MICHAEL SHARP,

 7                              Defendant-Respondent.
     -----------------------------------------------X
 8                            June 28, 2006
                              Riverhead, New York
 9

10
     B E F O R E:        HON. JEFFREY ARLEN SPINNER
11                            Supreme Court Justice

12

13                       MINUTES OF STIPULATION

14

15   A P P E A R A N C E S:

16
                              NEIL R. CAHN, ESQ., Pro Se
17
                                   -and-
18
                              STEVEN A. COSTANTINO, ESQ.
19                            Attorney for Plaintiff-Petitioner
                              632 Merrick Road
20                            Copiague, New York 11726

21
                              PAUL B. DALNOKY, ESQ.
22                            Attorney for Defendant-Respondent
                              333 East 6 Street, 1N
23                            New York, New York 10003

24
     Reported By:
25   GAIL E. GAZSY, R.P.R.
     Official Sr. Court Reporter
```

1    (Whereupon, after proceedings which were
2    recorded but not transcribed herein, the
3    following stipulation was placed on the record:)
4        MR. CAHN:  Judge, I just want to -- before
5    we put on the stip on the record, I just want to
6    outline the terms so we know we're on the same
7    page.
8        Judge, we're going settle a judgement to
9    you for the full amount of the claim, plus
10   interest on the full claim from August 11, 2003.
11       THE COURT:  That's at the statutory rate --
12       MR. CAHN:  Statutory rate.
13       THE COURT:  -- prescribed by the C.P.L.R.
14       MR. CAHN:  Correct.  Together with costs
15   and disbursements.  And the costs and
16   disbursements in this particular case, since
17   there was no discovery, are relatively modest.
18       The existing --
19       THE COURT:  Before we get to that, what is
20   the amount of the judgement --
21       MR. CAHN:  A hundred and --
22       THE COURT:  -- the principal amount of the
23   judgement?  Is it the one-thirty-six-two-eighty-
24   nine?
25       MR. CAHN:  No, it is not.

1          THE COURT:  The one-twelve-five-forty-seven?

2          MR. CAHN:  It is the one-twelve number.

3          THE COURT:  One-twelve-five-forty-seven-

4   twenty-eight with statutory interest from

5   August 11, 2003, plus the cost and disbursements

6   which are -- I guess that's your Index Number,

7   process serving --

8          MR. CAHN:  Right.

9          THE COURT:  -- and R.J.I., if you laid the

10  money out for it.

11         MR. CAHN:  Correct.  I think they filed a

12  Note of Issue.

13         MR. COSTANTINO:  And the jury demand.

14         MR. CAHN:  They filed a jury demand.  So

15  they're relatively modest.

16         THE COURT:  So that's not a recoverable

17  cost.

18         MR. CAHN:  The temporary restraint that is

19  contained in this case in Judge Bivona's order

20  dated August 2, 2004 is to be expressly continue

21  d and made part of the judgement --

22         MR. COSTANTINO:  And the satisfaction.

23         MR. CAHN:  -- pending payment and

24  satisfaction.

25         As part of the stipulation, once payment is

1    made, I will provide -- payment will be made

2    against delivery of the satisfaction of

3    judgement, together with the exchange of general

4    releases between me and Mr. Sharp and my consent

5    to the discontinuance of the pending divorce

6    action.

7        But today we are going to also dismiss with

8    prejudice Mr. Sharp's malpractice counterclaim.

9        THE COURT:  But that's in consideration of?

10        MR. CAHN:  That's in consideration of the

11    mere entry of judgement.

12        (Whereupon, after Mr. Sharp conferred off

13    the record with Mr. Dalnoky, proceedings resumed

14    as follows:)

15        MR. SHARP:  Is that once this is over, he's

16    not going to be able to sue me for anything

17    else?

18        MR. DALNOKY:  Right, exactly.

19        (Whereupon, after Mr. Sharp conferred off

20    record with Mr. Dalnoky, proceedings resumed as

21    follows:)

22        MR. SHARP:  I have no other fees that are --

23        MR. CAHN:  No, this is it.  Probably less

24    than $500.

25        MR. SHARP:  You can't waive the $500?  God

1    bless you.

2            MR. CAHN:  No, I can't.  I can't.

3            THE COURT:  The issuance of any satisfaction

4    of judgement is to be in compliance with the

5    strict mandates of Section 5020 of the Civil

6    Practice Laws and Rules.

7            MR. CAHN:  And we're requesting that you

8    allocute the parties on this, particularly in

9    light of a claim that has been raised during

10   this litigation that Mr. Sharp is suffering from

11   a severe learning disability in reading speed

12   and reading comprehension.  And I have discussed

13   that Mr. Sharp, this having been an oral

14   discussion, is fully competent and fully

15   understands the terms and conditions of the

16   settlement and consents.

17           THE COURT:  My practice is that, whenever a

18   matter is settled, the parties are allocuted on

19   the record to avoid any misunderstandings.

20           MR. CAHN:  There's also -- in addition to

21   the satisfaction papers delivered against the

22   payment, I will be providing -- I don't know if

23   I said this.  I will be providing the Sharps --

24           THE COURT:  -- general releases.

25           MR. CAHN:  -- a specific consent to the

1    discontinuance of the still pending matrimonial.

2        THE COURT: The matrimonial, correct.

3        MR. COSTANTINO: That's agreeable?

4        MR. DALNOKY: That's fine.

5        MR. COSTANTINO: Okay.

6        THE COURT: Does it also stand to reason

7    then that if there's a closing or if there's a

8    third-party involved such as a title company

9    that would you be delivering the satisfaction to

10   the title company to be held in escrow pending --

11       MR. CAHN: Either arrangements will be made

12   to deliver all papers in escrow or either I or

13   someone else from my office will be present.

14       THE COURT: So there will be no delays in

15   the satisfaction?

16       MR. CAHN: None.

17       THE COURT: Okay.

18       MR. SHARP: What does that mean?

19       MR. DALNOKY: Yeah, I'm not quite sure.

20       MR. COSTANTINO: I think what he means to

21   say that we guarantee you that when you schedule

22   your closing the papers necessary to show that

23   this action has been discontinued with prejudice

24   and all liens generated, we guarantee you will

25   be at the able, whether it's because Mr. Con or

1      somebody from his firm appears personally and

2      delivers them or because we deliver them to your

3      title company in advance so they have them in

4      their possession.

5          In other words, there will be no delay on

6      our part which in any way adversely affects your

7      ability to expedite a closing. We will

8      represent that on the record.

9          MR. CAHN: You just let us know when the

10     closing is. All the paperwork will be there.

11         MR. DALNOKY: Which closing will that be?

12         MR. CAHN: Any -- whatever refinance that's

13     going to generate the payment.

14         MR. COSTANTINO: You may decide you may not

15     want to refinance the Brooklyn building. You

16     may want to refinance the Suffolk building.

17         MR. DALNOKY: Well, the Brooklyn is ...

18         MR. COSTANTINO: My point is you don't

19     necessarily have to refinance that building.

20     You can refinance another piece of property.

21         MR. DALNOKY: Yeah.

22         MR. COSTANTINO: Whatever property you

23     decide, wherever the money comes from, we will

24     be there with general releases, stips of

25     discontinuance, satisfaction pieces, and

1    anything you need to fully and finally discharge

2    this.

3         MR. DALNOKY:  Michael Sharp.

4         MR. COSTANTINO:  Yes, he's the only one

5    that will consent to the action.

6         MR. CAHN:  Well.  No, I'm also consenting

7    to the lifting of the injunction in the divorce

8    action which restrained both parties from

9    encumbering marital assets.

10         MR. DALNOKY:  That only happens after the

11    payment.

12         MR. CAHN:  It will be delivered in exchange

13    for the payment.

14         MS. SHARP:  I wasn't told there was a

15    restraining order.  I don't know anything about

16    a restraining order on me and I have a complaint

17    against Mr. Cahn at the Bar Association and

18    Mr. Cahn and Mr. Clutz (ph.)  There's two --

19         THE COURT:  Ma'am.

20         MS. SHARP:  -- two complaints.

21         THE COURT:  Ma'am, this is not your forum.

22         MS. SHARP:  Oh.

23         THE COURT:  Mr. Dalnoky, do you wish

24    allocute your client with respect to settlement?

25         MR. DALNOKY:  Yeah.

1        THE COURT:  Okay.  Mr. Sharp, would you --

2        MR. CAHN:  Are we -- have we done it on the

3    record?

4        COURT REPORTER:  (Nodding.)

5        THE COURT:  Mr. Sharp, would you raise your

6    right hand, please, sir.

7        Do you solemnly swear or affirm that the

8    statements you are about to make in these

9    proceedings will be the truth, the whole truth,

10    and nothing but the truth?

11        MR. SHARP:  Yes.

12        THE COURT:  Put your hand down.  Please

13    state your name and address for the.

14        MR. SHARP:  Michael Sharp, 9 Lynch Street,

15    Huntington Station, New York 11746.

16        THE COURT:  Thank you.

17        **M I C H A E L    S H A R P**, having been

18    first duly sworn by the Clerk of the Court,

19    testified as follows:

20        THE COURT:  Mr. Sharp, you heard the

21    statements put upon the record by

22    Mr. Cahn with respect to a proposed settlement

23    of this matter; is that correct, sir?

24        MR. SHARP:  Yes.

25        THE COURT:  Okay.  Do you understand what

1  he's placed upon the record?

2          MR. SHARP:  For the most part, yes.

3          THE COURT:  For the most part has your

4  attorney explained it to you?

5          MR. SHARP:  Towards the end, whatever Mr.

6  Cahn said I didn't understand what ...

7          THE COURT:  As far as the essential terms

8  of the stipulation that -- do you understand

9  that, aside from the last few things that were

10 discussed, do you understand everything that was

11 put on the record?

12         MR. CAHN:  I believe so.

13         THE COURT:  All right.  As far as the last

14 few things that were discussed that Mr. Costantino

15 is speaking of, what he was saying was that if

16 you tell them that you are refinancing a

17 property --

18         MR. SHARP:  Okay.

19         THE COURT:  -- the judgement lien is going

20 to have to be released in order for the bank to

21 give you money and what is he is affirmatively

22 stating.

23         MR. SHARP:  -- is that the T.R.O. is going

24 to be --

25         THE COURT:  -- is that if you tell him the

1   date, time, and place of the closing, either he

2   will be present at the closing or he will

3   deliver in advance of the closing to the title

4   company, which is the company that has to record

5   all the documents -- he will deliver releases,

6   he'll deliver satisfactions, he'll deliver

7   whatever it is that is necessary for to you move

8   forward with the refinance without any hindrance

9   from him.

10       That's what he was saying.  Do you

11   understand that, sir?

12       In other words, if you tell him -- if you

13   say that you are going go to a closing --

14       MR. SHARP:  Okay.

15       THE COURT:  -- to get the funds to pay him,

16   he's not going say, "Well, okay, give me the

17   money first and then I'll give you the

18   releases."  What he's saying is he will make

19   sure that those releases, those satisfactions

20   are at the closing, whether he sends somebody

21   there with them to be there at the closing or

22   whether he send them in advance to the title

23   company which has to record them.

24       But either way, they will be at the closing

25   so that you will not have any delay.  Do you

 1  understand that representation, sir?

 2        MR. SHARP:  Yes.

 3        THE COURT:  All right.

 4        MR. SHARP:  The other thing is --

 5        MS. SHARP:  Thank you.

 6        MR. SHARP:  -- your Honor, that I didn't

 7  understand something about -- it's not clear in

 8  my wife's mind that there was a T.R.O. on my

 9  wife.  If I can ask you please, could someone

10  give a copy of something to my wife so she could

11  understand that there was a T.R.O.?

12        THE COURT:  My understanding is that there

13  was a temporary restraining order issued by -- I

14  believe it was --

15        MR. CAHN:  -- Justice Loughlin.

16        THE COURT:  -- Justice Loughlin.

17        MR. CAHN:  I have a copy.  I can provide

18  Mrs. Sharp with a copy.

19        THE COURT:  That was issued by Mr. Justice

20  Loughlin in the divorce action.

21        MR. CAHN:  (Handing to Mr. Sharp.)

22        THE COURT:  Aside from that, do you

23  understand and agree to these terms of

24  settlement?

25        MR. SHARP:  Yes.

1    THE COURT:  Okay.  Has anybody forced you

2    to enter into this settlement?

3    MR. SHARP:  I basically -- after seven

4    years I just can't take this anymore.  Even

5    though I know I don't owe that kind of money,

6    but I am going -- I am willing to pay him to

7    just get on with my life.

8    THE COURT:  Again, has anybody forced you

9    to settle this case?

10   MR. SHARP:  No.

11   THE COURT:  Has anybody threatened you in

12   any way to compel you to settle this?

13   MR. SHARP:  No.

14   THE COURT:  Other than what has been placed

15   upon the record, has anybody promised you

16   anything else for settlement of this case?

17   MR. SHARP:  Other --

18   THE COURT:  Other than what's been placed

19   on the record have there been any other promises

20   made to you?

21   MR. SHARP:  For settlement?

22   THE COURT:  Yes.

23   MR. SHARP:  I don't understand.  I'm sorry.

24   THE COURT:  Were there any side deals with

25   respect to this settlement?  Or it's just what's

1    been placed on the record here?

2         MR. SHARP:  Settlement is what we talked

3    about.

4         MS. SHARP:  (Indicating.)

5         MR. SHARP:  Settlement is --

6         THE COURT:  Ma'am, if you interrupt one

7    more time, I'm going to have my court officer

8    remove you from the courtroom.  You are not a

9    party to this action.  You are not a party

10   defendant.  You are not a party plaintiff.

11        Your repeated applications to intervene

12   have been rejected.  So, therefore, I do not

13   want you interfering with this settlement.  I do

14   not want you interfering with these proceedings.

15   Do you understand me?

16        MS. SHARP:  Yes.

17        THE COURT:  Thank you.

18        Mr. Sharp, in the last 72 hours have you

19   consumed any drugs?  Have you consumed any

20   alcoholic beverages or anything that would

21   impair your ability to understand these

22   proceedings?

23        MR. SHARP:  No.

24        THE COURT:  All right.  Mr. Dalnoky, do you

25   have any questions of your client?

1  MR. DALNOKY: Yes, a couple, your Honor, if

2  I may. Thank you very much.

3  **EXAMINATION**

4  **BY MR. DALNOKY:**

5  Q. Mr. Sharp, do you suffer from any learning

6  defects?

7  A. Uh ...

8  Q. Let me ask you, do you have dyslexia, Mr. Sharp?

9  A. Yes, I do.

10  Q. Is there any reason why your condition would

11  interfere with your being able to understand what has

12  been stated today on the record?

13  A. Just sometimes I -- I have to listen to

14  something a couple times before I understand it.

15  Q. Okay. But we've spent the better part of

16  probably an hour talking about these things, and I've

17  spoken to you several times and the other -- we've

18  spoken, the attorneys have spoken, and we've pretty much

19  hashed this out several times, and it's not something

20  that's been learned by you once quickly. So is there any

21  reason why your dyslexia might effect your ability to

22  understand what this agreement is?

23  A. What the --

24  Q. What the -- what we agreed to.

25  A. I -- I don't think so. I think I understood --

1    Q.   Okay.

2    A.   -- the terms.

3    Q.   And are you satisfied with your attorney?

4    A.   Yes.

5    Q.   And have I pressured you to make this agreement?

6    A.   No.

7              MR. DALNOKY:  That's it.  Thank you, your

8         Honor.

9              THE COURT:  Any questions of the defendant,

10        Mr. Costantino?

11             MR. COSTANTINO:  From myself?

12             THE COURT:  Yes.

13             MR. COSTANTINO:  No, sir.

14             THE COURT:  You may be seated, sir.  Thank

15        you.

16             MR. SHARP:  Thank you.

17             THE COURT:  Now as to the plaintiff,

18        Mr. Cahn, would you just please stand and raise

19        your right hand.

20             Do you solemnly swear or affirm that the

21        statements you are about to make in these

22        proceedings will be the truth, the whole truth,

23        and nothing but the truth?

24             MR. CAHN:  I do.

25             THE COURT:  Okay.  Thank you.  Would you

1  please be kind enough to state your name and

2  address for the court reporter.

3  MR. CAHN:  Neil Cahn.  May I give my office

4  address?

5  THE COURT:  By all means.

6  MR. CAHN:  1 Old Country Road, Carle Place,

7  New York 11514.

8  **N E I L   C A H N,   E S Q.,** having been

9  first duly sworn by the Clerk of the Court,

10  testified as follows:

11  THE COURT:  Okay.  Mr. Cahn, what is your

12  position with Newman & Cahn L.L.P., plaintiff?

13  MR. CAHN:  I'm partner.

14  THE COURT:  You have the authority to bind

15  that limited liability partnership?

16  MR. CAHN:  Yes, sir.

17  THE COURT:  All right.  The settlement that

18  you've stated upon the record, is that something

19  that you consented to on behalf of the

20  partnership?

21  MR. CAHN:  Yes, sir.

22  THE COURT:  Has anybody forced you to enter

23  into this settlement?

24  MR. CAHN:  No, sir.

25  THE COURT:  Has anybody compelled you in

1          any way to enter into this agreement?

2                  MR. CAHN:  No, sir.

3                  THE COURT:  Has anybody threatened you in

4          any way to enter into this settlement?

5                  MR. CAHN:  No, your Honor.

6                  THE COURT:  In the last 72 hours have you

7          consumed any drugs, alcoholic beverages, or any

8          intoxicants which might effect your ability to

9          understand these proceedings?

10                 MR. CAHN:  No, your Honor.

11                 THE COURT:  Mr. Costantino, do you have any

12         questions of your client?

13                 MR. COSTANTINO:  No, sir.

14                 THE COURT:  All right.  Mr. Dalnoky, do you

15         have any questions?

16                 MR. DALNOKY:  No, nothing further.

17                 THE COURT:  All right.  The Court finds

18         that under these circumstances the settlement

19         should be and the same is hereby approved.

20                 The Court will direct counsel for the

21         plaintiff to settle judgement on seven days

22         notice.

23                 THE CLERK:  Excuse me, Judge.

24                 (Whereupon, after the Clerk conferred off

25         the record with the Court, proceedings resumed

1   as follows:)

2   THE COURT: So Mr. Costantino, you can

3   settle the judgement on seven days' notice, and

4   this matter will be deemed concluded.

5   MR. COSTANTINO: Judge, thank you very much

6   for your time as well as your staff. It was a

7   pleasure to appear before you, and your efforts

8   were very instrumental in resolving this case

9   which, as Mr. Sharp said, pended for more than

10  seven years. Thank you very much.

11  MR. CAHN: Judge, I will be settling the

12  judgement.

13  MR. DALNOKY: Judge, thank you for your

14  patience. Thank you.

15  THE COURT: Thank you. Have a safe trip.

16

17  -oOo-

18

19  **The foregoing is certified to be a true and accurate**

20  **transcript of the stenographic notes for the**

21  **above-captioned matter.**

22

23  _____

24  **Gail Gazsy, R.P.R., Official Court Reporter**

25  **Supreme Court, State of New York**

: Notice of Settlement: July 18, 2006

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

------------------------------------------------

NEWMAN & CAHN, LLP,

Plaintiff-Petitioner,

- against -

MICHAEL SHARP,

Defendant-Respondent.

------------------------------------------------

Index No. 03-24209
Assigned Justice:
Hon. Jeffrey Arlen Spinner

**NOTICE OF SETTLEMENT**

To:    Paul B. Dalnoky, Esq.
       Counsel for Defendant-Respondent
       333 E. 6th Street, Apt. 1N
       New York, NY 10003
       (212) 260-4386

**PLEASE TAKE NOTICE** that the within is a true copy of a judgment which will be

presented for settlement to the Hon. Jeffrey Arlen Spinner, one of the justices of the above-named

Court at 9:30 a.m. on July 31, 2006.

Dated:    Carle Place, New York
          July 18, 2006

Certified in accordance with
22 NYCRR §130-1.1-a

NEWMAN & CAHN, LLP

by: Neil R. Cahn
Counsel for Plaintiff-Petitioner, *pro se*
Office & Post Office Address
One Old Country Road
Carle Place, New York 11514
Telephone: (516) 741-5650
Telecopier: (516) 741-9673
    (not for service)

At a Trial/IAS Part 21 of the
Supreme Court of the State of
New York, held in and for the
County of Suffolk, at Riverhead,
New York, this _____ day of
August, 2006

Present:

      HON. JEFFREY ARLEN SPINNER,

                                    Justice.

-----------------------------------------------------------

NEWMAN & CAHN, LLP,

                            Plaintiff-Petitioner,

             - against -

MICHAEL SHARP,

                      Defendant-Respondent.

-----------------------------------------------------------

Index No. 03-24209

**JUDGMENT**

      The issues in the above-entitled action having duly come on for trial before this Court and a jury on June 28, 2006, and the plaintiff-petitioner, Newman & Cahn, LLP, having appeared *pro se* by Neil R. Cahn, Esq, and by Steven A. Costantino, Esq., and the defendant-respondent, Michael Sharp, having personally appeared with his counsel, Paul B. Dalnoky, Esq.; and the parties, in open court, having on that day entered a stipulation;

      **NOW**, on motion of Newman & Cahn, LLP, with offices at 1 Old Country Road, Suite 295, Carle Place, New York 11514, the plaintiff-petitioner *pro se*, and on notice to Paul B. Dalnoky, Esq., 333 E. 6th Street, Apt. 1N, New York, NY 10003, counsel for the defendant-respondent, it is

      **ADJUDGED**, that the plaintiff-petitioner, NEWMAN & CAHN, LLP, with offices at 1 Old Country Road, Suite 295, Carle Place, NY 11514, do recover of the defendant-respondent, MICHAEL SHARP, residing a 9 Lynch St., Huntington Station, NY 11746, the sum of $112,547.28,

- 1 -

together with statutory interest thereon at 9% per annum from August 11, 2003 through the entry of judgment in the sum of $_____ as computed by the clerk of the court, for a total of $_____; together with $_____ as costs and disbursements as taxed by the clerk of the court, for a grand total of $_____, and said plaintiff-petitioner may have execution therefor; and it is further

       **ORDERED and ADJUDGED**, that until the payment to the plaintiff-petitioner of the full amount of this judgment and interest thereon, the restraints contained in the Order of the Court herein (Bivona, J.), dated August 2, 2004, shall continue in full force and effect, to wit: defendant Michael Sharp is enjoined and restrained from making any sale, transfer or other disposition including encumbering any interest in the real property known as 74 Eldert Street, Brooklyn, New York, 11207, or any interest in Sharp Realty, LLC, or any interest in the real property known as 9 Lynch Street, Huntington Station, New York, 11746; and it is further

       **ORDERED and ADJUDGED**, that until the payment to the plaintiff-petitioner of the full amount of this judgment and interest thereon, the defendant-respondent shall take no steps to discontinue the divorce action against his wife, Linda Sharp, Supreme Court Suffolk County Index # 27393-99, and the restraints contained in the Order of the Court therein (Loughlin, J.), dated September 24, 2001, shall continue in full force and effect, to wit: A preliminary injunction is granted prohibiting plaintiff [Michael Sharp] and defendant [Linda Sharp] from selling, removing, transferring, encumbering or otherwise disposing of any marital assets within his or her control during the pendency of this action, except during the course of ordinary business or where needed to satisfy living expenses; and it is further

       **ORDERED and ADJUDGED**, that defendant-respondent Michael Sharp may apply

I-807.JU2: Judgment ..., 8, 2006

to transfer or finance the real property known as 74 Eldert Street, Brooklyn, New York, 11207, or any interest in Sharp Realty, LLC, or any interest in the real property known as 9 Lynch Street, Huntington Station, New York, 11746, if and only if the plaintiff-petitioner, Newman & Cahn, LLP, is given notice of such application and written notice of the closing of any such transfer or financing is received by the plaintiff-petitioner, Newman & Cahn, LLP, not less than five (5) days before such closing, such notice also stating the date, time and place of such closing, and further if and only if at such closing the full amount of this judgment, with all interest thereon, is tendered to the plaintiff-petitioner, Newman & Cahn, LLP, or its authorized representative, by certified or bank check, or attorney's escrow account check, together with a general release of Newman & Cahn, LLP, Neil R. Cahn, and Edward Newman, from the defendant-respondent, Michael Sharp, in exchange for a recordable satisfaction of this judgment, general releases from  Newman & Cahn, LLP, Neil R. Cahn, and Edward Newman of the defendant-respondent, Michael Sharp, and the consent of Newman & Cahn, LLP to the discontinuance of the said divorce action, Supreme Court Suffolk County Index # 27393-99;

ORDERED and ADJUDGED, that all counterclaims of the defendant-respondent are hereby dismissed with prejudice.

ENTER

_____
J.S.C.

# *Process Handler et al. For Hire, Inc.*
## *Post Office Box 327*
## *New York, New York 10116-0327*
## *Telephone number: 1-(917)-696-2389*

July 27, AD 2006

Chambers of United States Federal District Judge for the District of Columbia
  Emmet G. Sullivan
**Attention:** The Honorable Emmet G. Sullivan
United States District Court for the District of Columbia
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue, Northwest, Room 4935
Washington, District of Columbia 20001-2802
United States District Court for the District of Columbia's main telephone number:
  1-(202)-354-3000
United States District Court for the District of Columbia's main facsimile number:
  1-(202)-354-3023
The Honorable Emmet G. Sullivan's main office telephone number: 1-(202)-354-3260

*Re: Service of Motion to Apply Temporary Restraining Order* (Case Number 1:06CV01267)

Dear Honorable Sullivan:

    I, Mr. Robert J. Brassell, Jr., N.P., of Process Handler et al. For Hire, Inc., do hereby acknowledge I served (pursuant to Section LCvR 65.1) Attorney General of the State of New York the Honorable Eliot L. Spitzer on behalf of the State of New York, the Governor of the State of New York the Honorable George E. Pataki and same Attorney General yesterday, Wednesday, July 26, AD 2006 at 3:47 PM EST via fax transmission.

Sincerely,

Mr. Robert J. Brassell, Jr., N.P.

Subscribed to before me this 27th day of July, 2006.

Notary Public

RJB, Jr., N.P.

WILLIAM J. UPTON
Notary Public, State of New York
NO. 02UP6131067
Qualified in Suffolk County
Commission Expires July 25, 2009